MORGAN et al., Respondents, v. POTT, Appellant.

St. Louis Court of Appeals, April 16, 1907.

1. **MORTGAGES: Presumption of Payment.** When more than
twenty years had elapsed since the execution of a mortgage
which had never been foreclosed, the presumption was that it
was paid and satisfied (R. S. 1899, section 4277); such a mort-
gage was inadmissible in evidence to show an outstanding title
in an action for trespass to the land covered by the mortgage.

2. **CONVEYANCES: Growing Timber.** The title to trees growing
upon land may be passed by a deed duly executed and acknowl-
edged in the form prescribed by the statute.

3. **ADVERSE POSSESSION: Color of Title: Void Tax Deed.** A
void tax deed under which a grantee enters into possession of
land is sufficient color of title to make possession of a part
of a contiguous body of land, covered by the deed, possession
of the whole, so that the Statute of Limitations would run in
favor of the possessor claiming title under such deed.

4. ———: ———: **Successive Possessors.** In order that the Stat-
ute of Limitations may run in favor of several successive per-

sons in possession of land under color of title, the color must pass from one to another by a paper chain of title; if there is a hiatus in the chain, the adverse possession is not continuous.

5. ————: **Actual Possession: Paying Taxes and Cutting Timber.** The payment of taxes upon land and cutting timber therefrom are acts of ownership but do not constitute actual possession so as to cause the Statute of Limitations to run in favor of the claimant.

Appeal from Pemiscot Circuit Court.—*Hon Henry C. Riley,* Judge.

AFFIRMED.

*Oliver & Oliver* for appellant.

(1) This is an action to recover damages for the trespass in cutting timber on the northwest quarter of section 11, township 19, range 11. It can be maintained only on one of two theories: (a) That plaintiffs were in the actual possession of the land when the trespass was committed; or (b) That the land was not in the actual possession of any one, but was in constructive possession of the plaintiffs as the legal owner. Neither of these conditions existed in this case. Brown v. Hartzell, 87 Mo. 568; Hampton v. Massey, 53 Mo. App. 501; Fitch v. Railroad, 10 L. R. A. 188; Lumber Co. v. Zeitinger, 45 Mo. App. 122. (2) When defendant is in the actual possession, trespass cannot be maintained. Ejectment is the remedy. Harris v. Sconce, 66 Mo. App. 345; Brown v. Perry, 61 Mo. 174; Brown v. Carter, 52 Mo. 46. (3) Growing timber is a part of the realty and its transfer must be made with all the formalities transfers of land. This was done in all the contracts set out in this case. Lead Co. v. White, 106 Mo. App. 230; DeLand v. Vanstone, 26 Mo. App. 297; Andrews v. Castigan, 30 Mo. App. 33; Cooley v. Railroad, 149 Mo. 493; Potter v. Everett, 40 Mo. App. 161; Lumber Co. v. Hines, 101 N. W. 959; Nevels v. Lumber Co., 49

L. R. A. 416. (4) Granting *arguendo* that plaintiffs had the legal title to the land, still if defendant and his grantors were actually in possession, claiming adversely, plaintiffs cannot maintain the action of trespass, and the judgment should be for defendant. Land Co. v. Markham, 96 Mo. App. 51.

*Ward & Collins* for respondents.

(1) Where no person has actual possession, the party having title to the land has constructive possession and can maintain trespass against any person cutting and removing the timber therefrom. Brown v. Hartzel, 87 Mo. 564; Bell v. Clark, 30 Mo. App. 230. (2) There is no such thing as color of title to timber; and no person can have actual possession of land by claiming the timber on it. As to the land, a timber contract from the true owner of the land is merely a license to enter upon the land, but a timber contract not from the owner of the land (or a void license) is no protection to an action for trespass. Chandler v. Edson, 9 Johns. 362; 18 Am. and Eng. Ency. Law, pp. 1131, 1133. (3) Appellant had no title to the land or timber; his grantor had no color of title to the land and timber; and the only possession appellant had of the one hundred and sixty acres of land in question was simply going upon the land under a license from a party not the true owner and cutting and removing the respondent's timber therefrom; "for, cutting timber and even paying taxes on land and keeping off trespassers do not constitute possession." Pharis v. Jones, 122 Mo. 131; Nye v. Alfter, 127 Mo. 537; Carter v. Hornback, 139 Mo. 245; Sweringes v. St. Louis, 151 Mo. 348.

STATEMENT.—The action is to recover damages for an alleged trespass in cutting timber on the northwest quarter, section 11, township 19, range 11, in Pemiscot county, Missouri. The petition alleged title and possession to the land in plaintiffs. The answer was a

general denial and an affirmative plea, that the Pascola Stave Company was in possession of the land and the owner of the timber standing and growing thereon, and set out the conveyances through which the timber was conveyed to the said stave company. The affirmative allegations of the answer were put at issue by a reply. The issues were tried to the court sitting as a jury. The defendant, at the close of all the evidence, requested the court to state its conclusion of the facts in writing. The court did not do this, but the following findings of the facts appear in the judgment:

"That the defendant, during the months of September, October and November, 1904, wrongfully entered upon the northwest quarter of section 11, in township 19, north range 11, east, in Pemiscot county, Missouri, and did then and there cut down and carry away, timber standing and being on said land; that at said times the plaintiffs were the owners in fee and in the constructive possession of the said land; and that the plaintiffs were the owners of said timber and trees and that the defendant did carry away said timber and did convert and dispose of the same to his own use?

The court assessed the value of the timber at $162.50 and rendered judgment accordingly.

Plaintiffs and defendant claim title from a common source, namely George Kyser, to whom the lands were patented December 21, 1869. Plaintiff's evidence shows that Kyser died intestate about the year of 1890, and that they are his sole heirs. In 1903 plaintiffs brought a suit, in the Pemiscot Circuit Court, against Abram R. Byrd and Ruddle McCombs to acquire the title to the lands. At the March term, 1904, of said court, the parties appeared and the cause was heard by the court, who adjudged and decreed as follows:

"That the defendants have no right, title, claim or interest therein. The premises considered, it is ordered, adjudged and decreed by the court that the absolute legal

and equitable title to the above-described real estate be, and the same is hereby vested in the plaintiffs, and that said defendants and those claiming under them are hereby precluded, estopped and forever debarred from setting up any right, title, claim or interest in or to said land."

This judgment was read in evidence by plaintiffs, over defendant's objection.

Plaintiffs introduced evidence tending to show the quality, quantity and value of the timber cut and removed by the Pascola Stave Company, a partnership of which defendant is a member and active manager. Defendant offered to show by competent evidence, that on June 22, 1879, Kyser and wife executed and delivered to Benj. F. Barcroft their mortgage deed to the land, in consideration of six hundred dollars, which deed was duly recorded. On the objection of plaintiffs, the mortgage was excluded as evidence. Defendant read in evidence a tax deed, dated September 4, 1895, purporting to convey the interest of all the heirs of Benj. Barcroft (deceased) in and to the land to J. E. Franklin, the purchaser at the tax sale. The deed was recorded October 28, 1895. Franklin and wife, on October 26, 1897, conveyed to A. R. Byrd, a tract of land containing four thousand seven hundred and twenty acres, including the land in dispute. On May 2, 1900, Byrd and wife conveyed an undivided one-half interest in the four thousand seven hundred and twenty acre tract to Ruddle McCombs. These deeds are duly acknowledged and recorded. On September 25, 1899, Byrd and C. W. Henderson, in consideration of $16,505.79, sold and conveyed to W. J. Lewis all the timber standing on the four thousand seven hundred and twenty acre tract, together with some other land, excepting from the conveyance the mulberry, pecan and catalpa timber, and granted to Lewis eight years in which to cut and remove the timber from said land, and the right to establish mills, tramways, roads, etc. This conveyance was duly acknowledged and

recorded. On January 30, 1902, Byrd and McCombs, by an instrument reciting that the McMullin Lumber Company, a corporation, had acquired the interest of W. J. Lewis in the timber theretofore conveyed to him, sold, assigned and conveyed to the said McMullin Lumber Company all the timber standing and growing upon the said land, except the mulberry, pecan, and catalpa, and granted to said company time until January 1, 1910, in which to cut and remove said timber. This contract and conveyance was duly acknowledged and recorded.

McMullin testified that the Chicago-Mississippi Land and Lumber Company, in 1904, succeeded the Mc-Mullin Lumber Company and acquired all its rights, title and interests in the timber growing on said land. After removing all the saw timber on the one hundred and sixty acres in question, the Chicago-Mississippi Land and Lumber Company, on September 10, 1904, sold all the stave and bolt timber on said tract to the Pascola Stave Company. This bill of sale and conveyance was duly acknowledged and recorded. Under this contract, the defendant, as manager of the Pascola Stave Company, entered upon the land by his agents and servants and cut and removed all the stave and bolt timber from the tract. The evidence shows that none of the land had ever been fenced or put in cultivation; and neither of the plaintiffs was ever in the actual possession of the land or was ever acquainted with its boundaries until pointed out to one of them a few days before the suit was brought. The one hundred and sixty acres of land in controversy is included in and contiguous to the four thousand seven hundred and twenty acre tract. The McMullin Lumber Company erected a saw mill on the larger tract, within one and a half miles of the land in controversy. There was another mill near the tract. From these mills, the McMullin Lumber Company and the Chicago-Mississippi Land and Lumber Company built tramways into the tract for the purpose

of getting the saw timber to the mills, and from these tramways logging roads radiated through the land, affording ways for hauling the saw logs to the tramways. But neither tramway reached the one hundred and sixty acre tract in dispute. However, roads were marked and cut out through it, and both companies and defendant (at different times) had a large number of men on the land, cutting and hauling the saw, stave and bolt timber. These corporations also built houses, sheds, etc., on the large contiguous tract for the purpose of housing their employees and work stock.

BLAND, P. J. (after stating the facts).—We do not think the court erred in excluding the Kyser-Barcroft mortgage. There is nothing to show that it was ever foreclosed, and more than twenty years having elapsed since its execution, the presumption is that it was paid and satisfied. [R. S. 1899, sec. 4277.]

2. None of the plaintiffs were parties to the suit to recover delinquent taxes; for this reason, if for no other, the tax deed read in evidence was ineffectual to pass their title to the purchaser at the tax sale. But defendant contends that his predecessors took possession of the land claiming title under the tax deed, and for this reason were not trespassers, and that he also, as their successor by grant of their possession and title, was not a trespasser. The tax deed furnished color of title, and the uncontroverted evidence is, that the McMullin Lumber. Company and the Chicago-Mississippi Land and Lumber. Company were in the actual possession of a part of the four thousand seven hundred and twenty acre tract, claiming title to the timber on the whole of the land, and exercised actual ownership over the whole, by cutting and removing therefrom the saw timber growing thereon. Trees standing on land are a part of the land, the title to which can be passed by a statutory deed. [State ex rel. v. Rubber Mfg. Co., 149 Mo.

193, and cases cited; Manning v. Coal Co., 181 Mo. 359; Lead Co. v. White, 106 Mo. App. l. c. 230, and cases cited.] The instruments whereby the timber was sold and conveyed to the McMullin Lumber Company and to the Pascola Stave Company contained apt words of conveyance, effectual to transfer an estate in the growing timber, and were acknowledged in the manner prescribed by section 907, Revised Statutes 1899, were good as statutory deeds and effectual to convey to the grantees therein named all the interest the grantor had in and to the timber growing on the land described in the instruments.

In Brown v. Hartford, 173 Mo. 183, 73 S. W. 140, it was held that, a void tax deed, under which the grantee entered into possession makes the possession of a part of the contiguous body of land therein described, possession of the whole; and in Holladay-Klotz Land and Lumber Co. v. Markham and Duckett, 96 Mo. App. 51, 75 S. W. 1121, we held that cutting and removing timber under color of title constitutes acts of adverse possession.

There is nothing in the record, except the verbal testimony of McMullin, to show under what conditions and terms the Chicago-Mississippi Land and Lumber Company acquired the timber from the McMullin Lumber company. He testified that the Chicago-Mississippi Land and Lumber Company was the successor of the McMullin Company so far as the latter company had lands, timber and business in this State, and that the property of the McMullin Company in this State was all merged in the Chicago-Mississippi Company; and the evidence shows that after the merger the Chicago-Mississippi Company took possession of the lands, mills, etc., of the McMullin Company. But the instrument, if one was executed, by which the McMullin Company transferred its lands, etc., to the Chicago-Mississippi Company was not offered in evidence and is not in the record.

In the conveyance from the Chicago-Mississippi Company to the Pascola Stave Company it is recited, that the contract of assignment from the McMullin Company of its interest in the timber to the Chicago-Mississippi Company was exhibited. But this recital was not even evidence of the existence of any written contract or conveyance from the McMullin Company to the Chicago-Mississippi Company and is of no value in tracing the chain of the possession under color of right.

Washburn says, "It is not necessary that land held adversely under color of title be held for the statutory period by one person. Provided the '*possessio pedis*' be held continuously by successive persons in privity, the color may pass from one to another by a paper chain title. But if a hiatus occurs in the paper chain, it is fatal as to so much of the land as is claimed by mere color." [3 Washburn on Real Property (6 Ed.), sec. 1987. See also League v. Atchison, 73 U. S. 112, and Osterman v. Baldwin, Ib. 168.] The hiatus in the Pascola Company's chain of title defeated its adverse possession under the color of title, and unless there is evidence tending to show actual possession in said company, the judgment should be affirmed. The only use the Pascola Company made of the land was to cut and remove timber therefrom. In Carter v. Hornbeck, 139 Mo. l. c. 245, it is said: "The vice of this instruction is in telling the jury that the use of the land in question by cutting and hauling firewood, saw timber, making and hauling fence rails from the land and clearing up same, constituted actual possession. Such acts do not constitute possession but merely tend to show claim of ownership. Thus in Pharis v. Jones, 122 Mo. 125, 26 S. W. 1032, it was said: 'Payment of taxes on land, cutting timber therefrom and protecting it from trespassers do not constitute possession but are merely acts tending to show claim of ownership.' So that defendant's actual possession in the absence of color of title

only extended to that part which he has inclosed. [De Graw v. Taylor, 37 Mo. 311; Cook v. Farrah, 105 Mo. 492, 16 S. W. 692; Ward v. Ihler, 132 Mo. 375, 34 S. W. 251; Pharis v. Jones, 122 Mo. 125; Nye v. Alfter, 127 Mo. 529.]" The Pascola Company was not in possession under color of title, was not in privity with the Mc-Mullin Company, was not in actual possession of the land; therefore, defendant failed to make out any legal defense to plaintiff's cause of action, and the judgment is affirmed. All concur.