WILLIAM W. HORTON and EVA L. HORTON v. J. W. GENTRY and MARY E. GENTRY, Appellants, J. M. WAISNER ET AL., Defendants.—No. 40462.—210 S. W. (2d) 72.

Division Two, April 12, 1948.

*Edwin F. Brady, F. M. Brady* and *James P. Roach* for appellants.

*Hugh Phillips* and *Morgan M. Moulder* for respondents.

[73] BOHLING, C.—William M. Horton and Eva L. Horton instituted this action on February 12, 1947, against J. W. Gentry and Mary E. Gentry and others to quiet title to a specified 140 acre tract of vacant, unimproved and uncultivated woods pasture land in Camden county, Missouri. Only the Gentrys contested plaintiffs' title. Plaintiffs pleaded ownership by virtue of the ten year statute of limitations (Sec. 1002*); and record title under a sheriff's tax deed, recorded October 27, 1930, and subsequent conveyances, and, in their reply, alleged that they had paid all taxes subsequent to said tax deed; that no person within three years or within ten years after the recording of said tax deed had instituted any proceeding for the recovery of said lands or the defeat of said tax deed, and that defendants had not offered to refund to plaintiffs all or any part of the taxes paid by plaintiffs as required by Sec. 11179. The instructions authorized a verdict for plaintiffs upon a finding plaintiffs had held adverse possession for ten years or a verdict for defendants upon a finding they held the record title, unless plaintiffs' claim of adverse possession had been established. The verdict and judgment were for plaintiffs and defendants appealed. Defendants contend a submissible case of adverse possession was not made. Plaintiffs say contra and that they may hold the judgment [74] on technical grounds hereinafter developed.

The common source of title was George F. Houseworth, who owned a 340 acre tract of land of which the 140 acres here involved were a part. His title was recorded on March 11, 1927.

The 140 acres were sold in 1930 under a special execution issued on a $61.63 judgment for delinquent state, county, and special taxes against W. S. Jackson, N. R. Walls, and C. F. Robertson to M. E. Booten, who recorded said sheriff's deed October 27, 1930. Booten and wife conveyed to William W. Horton and Eva L. Horton, plaintiffs, by warranty deed of September 24, 1945, recorded October 1, 1945.

---

*Citations of statutes refer to Revised Statutes of Missouri for 1939 and Mo. St. Ann., unless otherwise stated.

In February, 1932, Houseworth and wife conveyed the 340 acre tract by warranty deed to J. M. Waisner, and said Waisner and wife conveyed the 140 acres by quitclaim deed dated November 20, 1940, and recorded March 16, 1942, to J. W. Gentry and Mary E. Gentry, defendants.

Plaintiffs do not dispute that Houseworth was a necessary party to give the court jurisdiction in the tax suit (Sec. 9953, R. S. 1929); that his title was unaffected by the judgment, and that he retained the title of record as against Booten, the purchaser at the sheriff's sale under said judgment. Weir v. Cordz-Fisher Lumber Co., 186 Mo. 388, 395(I), 85 S. W. 341, 342(1); Davis v. Stevens, 344 Mo. 24, 27[1], 124 S. W. 2d 1132, 1133[1]; Harrison Mch. Wks. v. Bowers, 200 Mo. 219, 98 S. W. 770.

Mr. Booten was 86 years of age when the case was tried in 1947. He testified he bought the land to sell and paid the taxes from 1930 to 1945, when he conveyed to the Hortons. Witness owned considerable land. After the purchase he went over to see the 140 acre tract, could not find it, went to defendant Gentry's house (on the 200 acre tract) and Gentry showed him the land, stating: "This is your land." He was at Gentry's twice, and the second time Gentry told him he had a quitclaim deed to the land. He saw no house or fence on the 140 acres. He never lived on the land, never cropped it, fenced it, cleared it, cut timber for use, or put any improvements on it. He authorized Waisner, who had some cabins on adjoining land, to look after it. He testified that three or four persons had leased it for pasture and Waisner sold some timber and banked the money for him; that defendant Gentry's boy wrote, sometime after 1940, wanting to buy the land; that he named his price and the boy answered, wanting to buy on time. Witness was of opinion the only possession he had was through his deed and if his deed were bad he did not know about his possession. Booten did not establish definite times in his testimony. Gentry testified he came to Camden county in May, 1935; that he showed Booten where the 140 acres were, told him he held a quitclaim deed to it, denied he said it was Booten's land, and fixed that occurrence about 1939 or 1941.

Mr. Waisner, plaintiffs' witness, discovered that the 140 acres had been sold for taxes in connection with his contract to purchase the 340 acre tract from Houseworth. He paid Houseworth the agreed price "and forgot about the 140 acres." He did not know his warranty deed was good with respect to the 140 acres and he did not claim it although he used it. He listed the 200 acres for sale and his agent brought Gentry to see the land in 1935. On May 21, 1935, Waisner contracted to sell the 200 acres to Gentry and convey by warranty deed upon performance by Gentry. On said date and by separate contract, he also agreed to give Gentry a quitclaim deed to

the 140 acres when Gentry fulfilled his contract to purchase the 200 acres. He testified Gentry took possession in May, 1935, and enclosed all the land with an "electrical fence," and that he told Gentry and Gentry knew he claimed no title to the 140 acres. Gentry testified Waisner told him there was a tax title against the 140 acres and for that reason Waisner gave him the quitclaim deed. Waisner first knew Booten was the tax-sale purchaser when Booten authorized him to manage the land, telling him he could cut timber if he desired. He fixed the time as prior to 1940. Waisner authorized the Crouch boys to cut some stave bolts in 1942, and defendant Gentry stopped the boys, stating he owned the land. Mr. Crouch testified Waisner and he saw Gentry the next day and Gentry acknowledged [75] he did not own the land but did not want the timber cut because he wanted to buy it. Waisner testified, with respect to Booten's possession that witness pastured the land; that everyone pastured it, including defendant Gentry.

Mr. Horton went into possession after he purchased in 1945, started erecting fences, cutting brush, pasturing and farming the land. He testified Gentry's son fixed the fence at his insistence to keep Gentry's cattle off the land. He also testified he was depending on the tax deed for his title and did not consider a quitclaim deed of value.

Our cases hold that possession sufficient to vest title after the lapse of the statutory period must be hostile and under claim of right, actual, open and notorious, exclusive, and continuous and uninterrupted. Hilgert v. Werner, 346 Mo. 1171, 1176, 145 S. W. 2d 359, 361; 2 C. J. S. 520, Sec. 8. " 'Whenever any of these elements is lacking, no title by adverse possession can ripen.' " Brown v. Chapman (Mo.), 163 S. W. 2d 920, 922[3]. The burden of proof as to each element is on the person claiming title through adverse possession. State ex rel. Edie v. Shain, 348 Mo. 119, 122[2-4], 152 S. W. 2d 174, 176[4]. Clear and positive proof is required. Crider v. Meatte, 320 Mo. 474, 485, 7 S. W. 2d 691, 694[11, 12]; 2 C. J. S. 840, sec. 227.

The tax-sale purchaser Booten expressed some doubt whether he was ever on the land, although he testified Gentry showed it to him. He thought his only possession was through the deed and if it were bad he did not know about his possession. He did not fix the date when he located the 140 acres. The affirmative showing is that Gentry first came to Camden county in May, 1935, and he placed Booten's visit as occurring between 1939 and 1941. While Waisner knew in 1935 that someone had purchased the land at a tax-sale, he did not know the purchaser was Booten until Booten authorized him to look after the land, and this he testified occurred prior to 1940. This is not substantial evidence that Booten, through Waisner, went into possession ten years prior to February, 1947. Larwell v. Stevens, 12 Fed. 559, 560, states, with respect to adverse possession:

"The possession follows the title, and, if the owner and others are in possession, the law considers the owner to have possession." Weir v. Cordz-Fisher L. Co., 186 Mo. 377, 396(I), 85 S. W. 341, 343(1).

The following cases are to the effect that the payment of taxes, the pasturing of cattle, or the cutting of timber in the circumstances of the instant case, although they tend to show a claim of ownership, are not in themselves sufficient to establish adverse possession. Pharis v. Jones, 122 Mo. 125, 131, 26 S. W. 1032, 1034; Crider v. Meatte, 320 Mo. 474, 485, 7 S. W. 2d 691, 695[14-16]; Catlin v. Holliday-Klotz L. & L. Co., 151 Mo. 159, 52 S. W. 247; Kinsolving v. W. D. Lasswell Lumber Co., 318 Mo. 408, 420, 300 S. W. 506, 510; McVey v. Carr, 159 Mo. 648, 653, 60 S. W. 1034, 1035. Consult 2 C. J. S. 548, Sec. 38, with respect to possession of particular kinds of land; Fiorella v. Jones (Mo.), 259 S. W. 782, 785[6], on exclusive possession; Stone v. Perkins, 217 Mo. 586, 600, 117 S. W. 717, 720, on continuous possession.

The cases stressed by plaintiffs are readily distinguishable on the facts establishing the adverse possession. Cashion v. Meredith, 333 Mo. 970, 64 S. W. 2d 670; Lossing v. Shull, 351 Mo. 342, 173 S. W. 2d 1; Mann v. Mann, 353 Mo. 619, 183 S. W. 2d 557; Jamison v. Wells, 250 S. W. 63, (second appeal) 7 S. W. 2d 347. The evidence fails to establish plaintiffs' ownership by adverse possession.

Section 11177 is a special statute of limitations applicable to tax deeds to the extent hereinafter stated and plaintiffs invoke its provisions to establish that they are the legal owners of the title of record. Hill v. Atterbury, 88 Mo. 114, 120; Bird v. Sellers, 122 Mo. 23, 26 S. W. 668. Said Sec. 11177 so far as material here provides that suits or proceedings for the recovery of or to defeat a sale or conveyance of lands sold for taxes ". . . shall be commenced within three years from the time of recording the tax deed, and not thereafter . . . " At different times the General Assembly has enacted delinquent tax collection acts and Sec. 11177 was enacted as a [76] part of the act of March 30, 1872, being Sec. 221 of said act, Laws 1872, p. 130, 2 Wagner Stat. 1872, p. 1207. However, the General Assembly provided a different system for the collection of delinquent land taxes in 1877 (Laws 1877, p. 384), and while Sec. 11177 applies to the proceedings and a collector's tax deed under the act of 1872 said section has no application to a sheriff's tax deed under the act of 1877 under special execution to enforce a judgment in a back tax suit as is the instant deed. Wengler v. McComb (Mo.), 188 S. W. 76, 78[4]; Williams v. Sands, 251 Mo. 147, 165(V), 158 S. W. 47, 51(5); Gulley v. Waggoner, 255 Mo. 613, 625, 164 S. W. 557, 560. Consult arguendo Burkham v. Manewal, 195 Mo. 500, 507 (II), 94 S. W. 520, 521(2), to the same effect with respect to Sec. 11178, Id., being Sec. 222, Laws 1872, p. 130. The point is disallowed.

Plaintiffs contend in the event defendants prevail, that under Sec. 11179, they are entitled to recover all taxes paid by them and their grantor; and since defendants did not offer in their cross-petition to refund said taxes, as required by said section, plaintiffs' motion for a directed verdict should have been sustained. Hawkins v. Heagerty, 348 Mo. 914, 156 S. W. 2d 642; Rudd v. Scott, 351 Mo. 1206, 175 S. W. 2d 774. The trial court overruled plaintiffs' contention, evidently on the theory Sec. 11179 authorized reimbursement only to the party designated "defendant" in the style of the case as was considered in Manwaring v. Missouri L. & M. Co. (Div. II), 200 Mo. 718, 730, 98 S. W. 762, 765, 766, and Taff v. Tallman (Div. II), 277 Mo. 157, 166(II), 209 S. W. 868, 870[4].

Sections 11179 and 11180 are Secs. 1 and 2, respectively, of an act found in Laws 1903, p. 254. We outline the act. The title requires all persons who sue to recover any land sold for taxes "to reimburse any party to said suit, if a recovery to such land shall be had, for all taxes paid thereon by any party to such action," or his grantors, "permitting any such party . . . to plead such payment as a defense . . ." This language makes no distinction between plaintiffs and defendants, but includes all parties to the suit. Section 11179 provides that no suit for the determination of title to lands sold for taxes shall be maintained "unless such person . . . so seeking . . . shall in his petition offer to refund to the defendant therein, or to such other person . . . against whom such recovery is sought . . . all taxes paid by such defendant, or other persons, and his grantors . . ." Here "petition" and "defendant" are mentioned, but defendant is immediately extended by the words "or to such other person" against whom such recovery is sought, and the taxes included are those paid by "defendant, or other persons, and his grantors." "His grantors" modifies "other persons" as well as "defendant." The next sentence makes it sufficient for the "plaintiff or other person seeking such recovery" to offer to pay "in such petition." We think "other person seeking such recovery" includes a defendant, plaintiff being specifically mentioned, and the word "petition" must include cross-petition. While the first part of the concluding sentence, in the event of a judgment "adverse to the defendant," directs the court to adjudge the taxes "due to the defendant, or to other persons, . . . paid as aforesaid by defendant or his grantors as aforesaid," this is immediately followed with authority in the court, if asked "in the answer, or other pleading of the defendant, or other person, entitled to reimbursement" to adjudge the amount a lien upon the land in controversy. Section 11180 authorizes "any person," in addition to any other defense to "set up in his answer or other pleading" his claim for taxes "paid by him or his said grantors . . ." The pleading of a defendant

would be his answer; that of some other person would include the reply of a plaintiff to a defendant's cross-petition or cross-bill.

Manwaring v. Missouri L. & M. Co., supra, reasoning the act should be strictly construed because in derogation of the common law, held it did not confer the right to reimbursement of taxes paid upon a plaintiff but only upon a defendant as designated in the style of the case. The additional ground that the act was passed after the institution of that suit and was not retroactive existed in the Manwaring case. Taff v. Tallman, supra, followed the first ground assigned in the Manwaring case; and further considered that the change effected [77] in Sec. 8047, R. S. 1909 (now Sec. 645), by Laws 1917, p. 324, whereby the rule of strict construction of statutes in derogation of the common law was expressly abolished in Missouri and a liberal construction was substituted "so as to effectuate the true intent and meaning thereof," had no application to said act of 1903.

Under our quiet title statute any and all rights of any litigant in and to the real estate involved may be determined in one suit, and, consequently, a defendant may assert by cross-petition or cross-bill any claim, right, title or interest concerning the real estate which a plaintiff might assert in his original petition. See Sec. 1684; Rains v. Moulder, 338 Mo. 275, 283, 90 S. W. 2d 81, 84[6]; White v. Kentling, 345 Mo. 526, 534[6], 134 S. W. 2d 39, 44[11]; Crawford v. Amusement Syndicate Co. (Mo.), 37 S. W. 2d 581, 584[5]. When a defendant's cross-petition states a cause of action for affirmative relief, plaintiff's defense thereto is set forth in his reply. In these circumstances, although the parties retain their respective original designation of plaintiff and defendant, the defendant in reality assumes with respect to the cross-petition the position of a plaintiff and the plaintiff with respect to his defense thereto assumes the position of a defendant. In the event the plaintiff dismisses his petition after defendant seeks affirmative relief of a decree of title by cross-petition or cross-bill, the defendant becomes the plaintiff and the plaintiff becomes the defendant. Clark Real Est. Co. v. Old Trails Inv. Co., 335 Mo. 1237, 1244-1247, 76 S. W. 2d 388, 389, 392[6, 7]. See Dezino v. Wm. S. Drozda Realty Co. (Mo. App.), 13 S. W. 2d 659, 662.

The act of 1903 is not in derogation of a common or natural right, or penal in nature. The act is remedial, seeks to promote natural justice and right by affording one having color of title under a sale for taxes protection for the taxes paid on the land in the event another recover the land because the tax proceedings be void, voidable or defective; and supplies a deficiency existing in the common law. It should not be given a construction causing it to operate unequally upon like classes of persons or create unsubstantial distinctions between parties to a suit unless clearly required. Considering the act

as a whole, the General Assembly intended to protect the purchasers of lands at tax sales to the extent of the taxes paid on the land in the circumstances mentioned in the statute. A holding that the law applies to "defendants" and not to "plaintiffs" in instances wherein a defendant assumes the role of a plaintiff and seeks affirmative relief by cross-petition and causes a plaintiff to defend is to restrict its application to a greater extent than its language requires and causes the act to differentiate between plaintiffs and defendants in the absence of substantial grounds for the distinction. See reasoning in Queen City Inv. Co. v. Kreider (Mo. Div. II), 31 S. W. 2d 1002, 1006 [11-13] in equity, and result in Johnson v. McAboy (Div. I), 350 Mo. 1086, 1092, 169 S. W. 2d 932, 935; Annotation, 86 A. L. R. 1208. Consult also with respect to the rule of strict construction of statutes in derogation of the common law not being universally applicable Sec. 645; Rozelle v. Harmon, 103 Mo. 339, 343, 15 S. W. 432; 12 L. R. A. 187; City of Cape Girardeau v. Hunze, 314 Mo. 438, 456, 457, 284 S. W. 471, 476[1], 47 A. L. R. 25; Sutherland, Statutory Construction, 3d Ed., secs. 6201-6206; 50 Am. Jur. 429, sec. 405 also secs. 402, 396; 59 C. J. 1124, secs. 665, 666; Sedgwick, Construction of Statutes, 3d Ed., p. 270, note; Crawford, Statutory Construction, sec. 251. As stated in Queen City Inv. Co. v. Kreider, supra, what was said on the instant issue in Manwaring v. Missouri L. & M. Co., supra, was not necessary to a decision in that case. Taff v. Tallman, supra, however, should no longer be followed on the issue.

The judgment should be reversed and the cause remanded for such further proceedings as the litigants may deem proper. It is so ordered. *Westhues* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by Bohling, C., is adopted as the opinion of the court. All the judges concur.